## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**MICHAEL D.,[1]**

        **Plaintiff,**

                                        **Case No. 3:20-cv-0290**

    **v.**                                    **Magistrate Judge Norah McCann King**

**COMMISSIONER OF SOCIAL SECURITY,[2]**

        **Defendant.**

### OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Michael D. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. This matter is now before the Court, with the consent of the parties*, see Joint Consent of the Parties*, ECF No. 4, on *Plaintiff's Statement of Errors*, ECF No. 9, *Defendant's Memorandum in Opposition*, ECF No. 11, *Plaintiff's Reply*, ECF No. 12, and the *Certified Administrative Record*, ECF No. 7. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court denies *Plaintiff's Statement of Errors* and affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

## I.    PROCEDURAL HISTORY

On July 26, 2017, Plaintiff filed his application for benefits, alleging that he has been disabled since February 1, 2014, due to a number of physical and mental impairments  R. 155-64.[3] The application was denied initially and upon reconsideration. R. 58-84. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 95-97. Administrative Law Judge ("ALJ") Gregory G. Kenyon held a hearing on May 30, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 29-57. In a decision dated July 31, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from July 26, 2017, the date on which the application was filed, through the date of that decision. R. 15-24. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 15, 2020. R. 1-6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 23, 2022, the case was reassigned to the undersigned. ECF No. 14. The matter is ripe for disposition.

## II.   LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the

---

[3] The Court will refer to pages in the Certified Administrative Record as "R. __,"using the pagination as it appears in the Certified Administrative Record.

substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof through step four; at step five, the burden

shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec*., 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f)  . If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so,

4

then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 38 years old on the date on which the application was filed. R. 23. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since that date. R. 17.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: anxiety disorder, depressive disorder, and history of alcohol and cannabis abuse. R. 17. The ALJ also found that the record contained no evidence of a severe physical impairment. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> (1) limited to performing unskilled, simple, repetitive tasks; (2) occasional superficial contact with co-workers and supervisors (superficial contact is defined as retaining the ability to receive simple instructions, ask simple questions and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people, resolving interpersonal conflicts, or supervising others); (3) no public contact; (4) no teamwork or tandem tasks; (5) not close over the shoulder supervision; (6) no fast paced production work or jobs which involve strict production quotas; and (7) limited to performing jobs which involve very little, if any, change in the job duties or the work routine from one day to the next.

R. 19. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work. R. 23.

At step five, the ALJ relied on the testimony of the vocational expert to find that a significant number of unskilled jobs at the medium level of exertion–*i.e.*, jobs as a laundry

worker, warehouse worker, and hand packager–exist in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 24. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 26, 2017, the application date, through the date of the decision. R. 24.

Plaintiff disagrees with the ALJ's findings at step four and argues that the ALJ erred in evaluating the treating and consultative examining medical source opinions and the treatment record. He asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings *Plaintiff's Statement of Errors,* ECF No. 9; *Plaintiff's Reply*, ECF No. 12. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief,* ECF No.11.

## IV.    RELEVANT EVIDENCE

Plaintiff testified at the administrative hearing that he cannot work because of panic attacks. R. 38. The attacks began in mid-2013 and have gotten progressively worse. R. 49. He experiences "[a]nywhere from 10 to 20 a day." *Id*. During an attack, he stutters, has difficulty finding words, has trouble breathing, and has chest pains. R. 39. His thoughts race constantly. R. 40. He also has difficulty being around other people. *Id*. He leaves home with his wife, typically to a park, twice per week. R. 41. His anxiety also causes weekly episodes of anger. R. 43. He experiences difficulty concentrating on a daily basis and has trouble with his short term and long term memory. R. 44. He relies on "alarms" to remind him of doctor appointments and medication. R. 45. He sleeps no more than two or three hours per night. R. 50. His family physician, James A. Derksen, M.D., referred Plaintiff to a mental health professional but,

because that person did not accept Plaintiff's insurance, he did not pursue that referral. R. 45. Instead, Dr. Derksen, who prescribes medication, sees Plaintiff every three months. R. 46.

Dr. Derksen, Plaintiff's long-time family practitioner, has treated Plaintiff for, *inter alia*, panic disorder with agoraphobia and severe panic attacks, post-traumatic stress disorder, and depression. Findings on clinical examination commonly included findings that Plaintiff was oriented and had normal judgment and insight, but whose mood and affect were anxious and depressed. R. 399 (August 2016), 392 (April 2017), 386 (July 2017).

In September 2017, Stephen W. Halmi, Psy.D., performed a consultative psychological evaluation of Plaintiff upon referral from the state agency. R. 410-16 . On mental status examination, Plaintiff presented as anxious and fidgety. R. 413. His affect was blunted and anxious and he reported long-standing and worsening depression. *Id.* On clinical examination, Dr. Halmi noted that Plaintiff was alert and oriented, maintained adequate attention and concentration, and had a fair remote memory; his intellectual abilities were rated between low average and average. R. 414. According to Dr. Halmi, Plaintiff suffers from depression and anxiety. R. 415. Although Plaintiff "has had minimal treatment for his dysphoria,… it is chronic and debilitating." *Id.* His prognosis was "poor." *Id.* However, Dr. Halmi also opined that "the results of this evaluation are tenuous." *Id.* In assessing Plaintiff's ability to engage in work-related activities, Dr. Halmi opined that Plaintiff "had no difficulty understanding or following multi-step instructions," he "would likely have concentration problems if he was working with others or in a setting where he had frequent contact with the general public," and he has "a very low frustration tolerance. He does not appear to have any coping skills to manage even minor stress." R. 416. In referring to Plaintiff's ability to maintain effective social interaction with supervisors, coworkers, and the general public, Dr. Halmi stated that Plaintiff was cooperative

7

but that Plaintiff reported a history of difficulty getting along with others and acting in an antisocial manner. *Id.*

In October 2017, Courtney Zeune, Psy.D., reviewed the record on behalf of the state agency and found that the record documented the severe impairments of depressive, bipolar and related disorders, and anxiety and obsessive-compulsive disorders, R. 65, manifested by sustained concentration and persistence limitations and social interaction limitations, R. 66. According to Dr. Zeune, Plaintiff was moderately limited in his ability to understand and remember detailed instructions, and to maintain attention and concentration for extended periods. R. 67. He was moderately limited in his ability to work in coordination with or in proximity to others without being distracted by them, and in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* He was markedly limited in his ability to interact appropriately with the general public, was moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors, and to respond appropriately to changes in the work setting. R. 68. According to Dr. Zeune, Plaintiff could perform simple and routine tasks in an environment with few changes and relaxed production quotas; he is unable to work with the general public, but could have superficial contact with coworkers; he would be unable to mediate, negotiate or direct others." *Id.* Dr. Zeune explained her opinions:

> Clmt does not have hx of mental health tx other than medication Rx by his PCP. Clmt has stopped working due to mental health conditions, but is able to attend to most ADLs and care for children.

*Id.* In December 2017, David Dietz, Ph.D., reviewed the record on behalf of the state agency and agreed with Dr. Zuene's assessment and opinions. R. 81.

Plaintiff reported at his April 2018 office visit with Dr. Derksen that his anxiety had worsened; his medication was adjusted. R. 597-98. He was oriented and his judgment and insight were normal; his mood and affect were anxious and depressed. *Id*. Dr. Derksen's September 2018 office notes reflect diagnoses of "mild major depression" and anxiety disorder. R. 591. Plaintiff was again oriented and his judgment and insight were normal; his mood and affect were again anxious and depressed. *Id*. He was not taking medication for depression. *Id.* Office notes from January 2019 reflect Plaintiff's report that his "moderate" depression and anxiety had been stable; he was not on medication for his depression. R. 585. Plaintiff was oriented and his judgment and insight were again normal. R. 577. This time, however, his mood and affect were recorded as "anxious and depressed. (Improved today)". R. 586.

In March 2019, Dr. Derksen completed an "Impairment Questionnaire" in which he indicated that Plaintiff suffers from anxiety, hypertension, depression and post-traumatic stress disorder. R. 418. The conditions are manifested by sleep disturbance, emotional lability, recurrent panic attacks, anhedonia, feelings of guilt/worthlessness, social withdrawal, obsessive or compulsions, intrusive recollections of a traumatic experience, generalized persistent anxiety, hostility and irritability. *Id.* According to Dr. Derksen, Plaintiff's impairments would cause him to be absent from work more than three time per month, and to be distracted 2/3 of an 8 hour workday. R. 419. Dr. Derksen opined that Plaintiff would not be able to perform full time competitive work over a sustained basis. *Id.*

At his April 2019 office visit with Dr. Derksen, Plaintiff's Klonopin was increased because of his worsening anxiety. R. 576. His mild major depression was characterized as "stable" and his panic disorder with agoraphobia and severe panic attacks were characterized as "[s]table and controlled at present." *Id*. Plaintiff reported that his depression and anxiety had

been stable since his prior office visit; he was not taking medication for his depression. *Id.*

Plaintiff was oriented and his judgment and insight were normal. R. 577. His mood and affect

were again recorded as "anxious and depressed. (Improved today)". *Id.*

In his decision, the ALJ summarized the medical evidence and evaluated the medical

opinions. R. 19-22. The ALJ found Dr. Derksen's March 2019 opinion "not persuasive:"

> He treats the claimant but is the claimant's primary care physician and is not a
> psychologist, psychiatrist, or other mental health professional. He does not have
> program knowledge and he provided no supporting comments or explanation for
> his findings. His progress notes show some references to anxiety but also indicate
> that the claimant's anxiety is of no more than moderate level severity and has
> been adequately controlled with mild psychotropic medication. Dr. Derksen's
> progress notes do not portray the claimant's anxiety as disabling and certainly not
> to the extent that the claimant would be absent more than three times per month or
> be off task 2/3 of the time. Dr. Derksen's assessment also must be considered in
> conjunction with the fact that the claimant has [made] little effort to seek
> treatment from a mental health professional. Very recent notes indicate he is
> under the care of a psychologist, although the claimant denied this in testimony.

R. 21.

The ALJ found Dr. Halmi's opinions "partially persuasive:"

> …Dr. Halmi appears to be relying on an uncritical acceptance of the claimant's
> subjective complaints and the claimant was calm and cooperative during the
> examination in spite of his allegations of an explosive temper. Dr. Halmi also
> noted the claimant was vague regarding his history and symptomatology, and he
> described the evaluation results as "tenuous" as he suspected the claimant may
> have been abusing substances at that point in spite of his assertions to the
> contrary.

R. 22.

The ALJ found the opinions of the state agency reviewing psychologists "substantially

persuasive" because "[t]hey have specialization and extensive program knowledge," although

"they did not examine the claimant or have a treatment relationship with him." *Id.*

## V.   DISCUSSION

10

Plaintiff contends that the ALJ erred in his evaluation of the medical source opinions and, in particular, that of Plaintiff's treating physician, Dr. Derksen. This Court disagrees.

For claims such as Plaintiff's, *i.e.,* filed after March 27, 2017,[4] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 416.927 *with* 20 C.F.R. § 416.920c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. § 416.920c(c)(1). As to the consistency

---

[4] As previously noted, Plaintiff's claim was filed on July 26, 2017.

factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. § 416.920c(c)(2).

The applicable regulations further require the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive he find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 416.920c(b). Specifically, the ALJ must explain how he considered the 'supportability' and 'consistency' factors for a medical source's opinion and ALJ may—but is not required to—explain how he considered the remaining factors. 20 C.F.R. § 416.920c(b)(2). However, "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how he considered all of the factors for all of the medical opinions and prior administrative medical findings in [the claimant's] case record." 20 C.F.R. § 415.920c(b)(1).

The ALJ fully complied with these standards and his findings and conclusions enjoy substantial support in the record. The ALJ acknowledged Dr. Derksen's lengthy treatment relationship with Plaintiff, but properly recognized that Plaintiff's long-time family practitioner is not a mental health specialist. Importantly, the ALJ found that Dr. Derksen's extreme restrictions were not supported by his own treatment records, which consistently reflected only mild or moderate impairments that were apparently adequately controlled with either prescribed medication or, in some instances, with no medication at all. Moreover, Dr. Derksen's opinion was not consistent with those of the state agency reviewing psychologists, whose opinions the

12

ALJ found "substantially persuasive." Furthermore, although Plaintiff insists that Dr. Derksen's opinion is consistent with that of Dr. Halmi, the consultative examining psychologist, the ALJ found that Dr. Halmi's opinion was only "partially persuasive" in light of the consultative examiner's reliance on Plaintiff's reports which were in some instances inconsistent with the doctor's observations and in light of Dr. Halmi's comment that his findings were "tenuous." The Court also disagrees with Plaintiff's assertion that the ALJ erred in failing to explain in what respect Dr. Halmi's opinion was "partially persuasive." A fair reading of the ALJ's decision, including in particular the RFC found by the ALJ, makes clear that the ALJ accepted Dr. Halmi's opined limitations in Plaintiff's ability to interact with others.

In short, the ALJ's findings and conclusions enjoy substantial support in the record. This Court must therefore defer to his findings and conclusions, even if there is also evidence in the record that would have supported the opposite conclusion. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

## VI.     CONCLUSION

For these reasons, the Court **DENIES** *Plaintiff's Statement of Errors*, ECF No. 12, and **AFFIRMS** the Commissioner's decision. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date:  July 13, 2022                                  *s/Norah McCann King*
                                                                    NORAH McCANN KING
                                                                    UNITED STATES MAGISTRATE JUDGE

13